UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Ernest Adimora-Nweke | § | Civil Action No. 4:22-cv-03155 |
| *Plaintiff* | § | |
| v. | § | **United States Courts** |
| *Property Acquisition Services, Inc., North Fort* | | **Southern District of Texas** |
| *Bend Water Authority, AT&T, Comcast,* | | **FILED** |
| *CenterPoint Energy, Mark Heidaker, Steve* | | **NOV 03 2022** |
| *Bonjonia, & Sean Patrick Kennedy* | | |
| *Defendants* | | **Nathan Ochsner, Clerk of Court** |

## PLAINTIFF'S 2nd AMENDMENT TO ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT & CLERK:

COMES NOW Ernest Adimora-Nweke, Plaintiff, in the case with the style number above,

and hereby files this 2nd amendment to original complaint, and will show as follows:

### SUBJECT PROPERTY:

6826 Caddo Lake Lane, Houston, TX, 77083, Harris County; jointly owned by (H) Ernest A.

Nweke, and (W) Ngozi Adimora-Nweke, as a homestead property, since July 1993. Harris County

Property Records ("HCPR") File No(s): P358971 (07/27/1993) & U994839 (04/19/2001).

### PARTIES:

#### Plaintiff(s):

Plaintiff, Ernest Adimora-Nweke, *pro-se*, (a) remotely works from, and is a resident of the

homestead "subject property:" 6826 Caddo Lake Lane, Houston, TX, 77083; (b) is counsel and

attorney-in-fact for Plaintiff, **Ngozi Adimora-Nweke(a "Real Party of Interest" and homestead**

**owner)** in all claims and related matters on the subject property; and (c) brings all claims on behalf

of Ngozi, and all necessary or interested current and putative Plaintiff(s) – including **himself,**

**Ngozi, and** all subject property's past and future owners, residents, invitees, and beneficiaries.

#### Defendant(s):

AT&T Corporation, and/or AT&T Services Inc., is a duly registered Texas entity. It has responded

to this suit via **Southwestern Bell Telephone Company d/b/a AT&T,** a duly registered TX entity.

Comcast Corporation, **Comcast Holdings Corporation** ("Comcast"),[1][2] and Comcast Cable, are duly registered entities headquartered at 1701 John F. Kennedy Blvd. FL 32 C/O D. Zambrano Philadelphia, PA 19103-2855, and doing business on the subject property independently, or via or with Comcast of Houston, LLC. "Comcast" was served citation and has responded. Comcast Holdings Corporation lacks a TX registered agent, but may be served process via TX Sec. of State's listed address: 1500 Market St., C/o Comcast Tax Dept. Philadelphia, PA 19102-2100.

CenterPoint Energy Inc., Houston Light & Power's successor-in-interest, is a duly registered Texas entity. It has responded to this suit and alleged **CenterPoint Houston Electric, LLC** & **CenterPoint Energy Houston Electric, LLC**[3] are also alleged to be Houston Light & Power ("HL&P")'s successor-in-interest, are supposedly duly registered Texas entities. If necessary, per court order, **CenterPoint Energy Houston Electric, LLC** may be served process via its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201. **CenterPoint Houston Electric, LLC** may be served process via CenterPoint Energy Inc.'s General Counsel, **Monica Karuturi**[4], at CenterPoint Energy, Inc., 1111 Louisiana St. Ste. 264, Houston, TX 77002.

North Fort Bend Water Authority ("NFBWA") is a duly registered local government entity. It was served process via its counsel, Christina L. Miller, (cmiller@abhr.com) at Allen Boones Humphries Robinson, LLP, and has responded to this suit.

Mark Heidaker is the founder and president of Property Acquisition Services, LLC ("PAS"), as successor to or d/b/a Property Acquisition Services, Inc, ("PAS") a company doing business in Texas, and who along with PAS' board of directors, was involved in the matters complained of. Mark Heidaker and PAS has responded to this suit.

Steve Bonjonia is a Texas resident, and at all relevant times, a Vice President executive at PAS and/or NFBWA, and involved in the illegal actions pled. He has responded to this suit.

---

[1] Comcast Corporation, Comcast Holdings Corporation, & Comcast of Houston, LLC are altogether and individually be referred to as "Comcast."

[2] Plaintiff, Ernest Adimora-Nweke, noticed and communicated with the General Counsels of Comcast Corporation, including a **Thomas J. Reid** and **Lynn Charytan**, (non-TX resident **putative Defendant(s) to be served process via Comcast PA address**) since Feb 2022, on the matters, and prior to Comcast's further harmful illegal activities on Plaintiffs and the subject property, its owners, residents, invitees, beneficiaries, etc. Such is basis for §1986 claim per Comcast executives' actual knowledge and refusal to prevent the ongoing conspiracy and harm on Plaintiff(s).

[3] Defendants CenterPoint Energy Inc, CenterPoint Houston Electric, LLC, CenterPoint Energy Houston Electric, LLC, and Houston Power & Lighting Co. are altogether and individually referred to as "CenterPoint" or "HL&P."

[4] Counsel, Ernest Adimora-Nweke, emailed said Ms. Karuturi on 3/21/2022, on the claims. HL&P retained counsel who provided Counsel with actual knowledge of the 1966 agreement and the 1977 agreement's additional easement, plat, and replats. HL&P is obligated to defend against the deed terms. Hence, a basis for also §1986 claim per HL&P executives' long-standing actual knowledge and refusal to prevent the ongoing conspiracy and harm on homeowners.

Sean Patrick Kennedy is a resident of TX, and an employee of PAS during all the relevant times, and involved in the illegal actions pled. He has responded to this suit.

**City of Houston**[5] & **Houston Police Department** ("HPD"), may be respectively served process via (a) City Secretary, Pat J. Daniel, or any other such designated, at 900 Bagby St. Room, P101, Houston, TX 77002; and (b) Troy Finner, Chief of Police, 1200 Travis St., Houston, TX 77002.

Other Interested Parties to be served or sent file-stamped copies in due course:

Braewood Glen Community Association, Inc. c/o Kathy Ann Terry, The Law Office of Kathy Ann Terry, 12807 Jones Rd., Houston, TX 77070. (Subject property subdivision's HOA and counsel) Braewood Glen was served process via certified mail in State Court pre removal.

Ken Paxton, Texas AG, Consumer Protection Division, P.O. Box 12548, Austin, TX 78711-2548.

## DISCOVERY, DAMAGE LIMITS, JURY REQUEST, & VENUE

DISCOVERY DATE FOR STATUTE OF LIMITATIONS: Facts sufficient for accrual of Plaintiff(s) and/or homeowners' causes of actions were discovered on or after 02/24/2022.

DAMAGE LIMIT: Plaintiff(s) damages claims amount to above $1,000,000,000.00.

JURY TRIAL REQUEST: Plaintiff(s) requests a jury trial.

VENUE: Harris County Civil Court at Law, per the inverse condemnation claims;[6] S.D. Texas per §1983, §1985, & §1986 claims pled and entitled.

## FACTS[7]
### HL&P/CENTER POINT ENERGY

*Inter alia*, Subject property is subject to a September 16, 1966, HL&P electric transmission and distribution lines easement agreement with prior Grantors of the subdivision: C.W. Duncan *et al*. *See* HCPR File No: C423806. It is also subject to a November 18, 1977, Grantors-Developer "Agreement for Underground Electric Service" with HL&P. *See* HCPR File No. F538775. It is

---

[5] City of Houston may purport to have an interest in the property, which Defendants may or may not operate upon, and which was not duly obtained per terms of deeds, plat, and replats; HPD are Defendant(s)' co-conspirators per agreement and act in furtherance to execute harmful & illegal invasions, harassment, and operations: 42 U.S.C. claims.
[6] *See e.g.*, *Dahl v. State*, 92 S.W.3d 856 (Tex. App – 14th Houston, 12/12/2002)
[7] As necessary and applicable, Plaintiff(s) hereby incorporate by reference, all facts, allegations, and exhibits refenced or pled in this document and this document's other sections above and below, as part of this FACTS section.

also subject to 1977 plats and replats, and a 1978 replat of a replat, which contain reservations for the 1966 and 1977 HL&P deed-agreements.

There are no duly recorded deed-agreements for interests in subject property (Lot 17) and its enclosed boundaries, which supersede (a) the prior reservations ("… restricted for same under the terms and conditions of such restrictions filed separately.") clause in the plat and replats, (b) the 1977 HL&P deed-agreement, and (c) the 1966 HL&P deed-agreement.

The 1977 Agreement has no superseding clause to vitiate the 1966 Agreement's terms and its "Grantor's adjoining lot" clause that protects Lot 17.  The plat and replats are irrelevant (a) as they lack a superseding clause to vitiate the 1966 and 1977 Agreement's terms that benefit Lot 17; (b) per the prior reservations ("… restricted for same under the terms and conditions of such restrictions filed separately.") clause in the plat and replats; and (c) per Lot 17 being subject to the 1966 & 1977 deed-Agreements. *Supra*, Pgs. 4 - 6.

There are no duly recorded agreements for interests in the Lot 17 and its enclosed boundaries, that supersede (a) the prior reservations ("… restricted for same under the terms and conditions of such restrictions filed separately.") clause in the plat and replats, (b) the 1977 deed agreement, and (c) the 1966 deed agreement. *Tex. Property Code Sec. 13.001*

Current homeowners were never approached to give required joint consent, nor gave any joint-consent to any such easement rights.[8]

Ngozi never had counsel involved in any manner on the subject property, until counsel subscribed below.[9]  Hence no statute of limitations issue in this case for any causes of action

---

[8] *See*, Exhibit "**Ngozi Adimora-Nweke [8/24/2022] Affidavit on Comcast, AT&T, & CenterPoint/HL&P Matters**," Pg. 1 – 2 of 4; *See also, Tex. Fam. Code Sec. 5.001*.
[9] *See*, Exhibit "**Ngozi Adimora-Nweke [8/24/2022] Affidavit on NFBWA & PAS Water Line Easement Matter**," Pg. 1 of 5; *Accord*, Exhibit "**Ngozi Adimora-Nweke [8/24/2022] Affidavit on Comcast, AT&T, & CenterPoint/HL&P Matters**.

4

factually pled:   E.g., the declaratory judgment to quiet title, injunction, and/or claims for damages.[10]

No Defendant or non-homeowner "person" duly acquired any easement, public or mass-commercial use, or any such property rights in Lot 17 and any of the land within its fenced/enclosed boundaries, post transfer of title from Developer(s) to any subsequent homeowner, including current homestead owners.  Not even City of Houston per terms of Lot 17.

***

Neither the 1978 replat, nor the 1977 agreement, nor the 1966 agreement, contained terms or showed any underground electric boxes or electric wire poles or apparatuses installed or burdening the subject property and its backyard enclosure.  *See* HCPR File No. F758989.

The subject property was first acquired post erection of a single-family home, and was sold to current homeowners, in 7/23/93.  Ngozi Adimora-Nweke and Ernest A. Nweke, acquired the property on 7/23/93; a day after Ngozi's husband and children migrated to the United States.[11]

---

[10] Doc. 1-6, pgs. 2 – 42, Cause 4:22-cv-03155, filed on 9/15/2022; Docs 16 & 17, Cause 4:22-CV-03155, filed on 9/20/2022.

[11] Ngozi, a marginalized immigrant from Nigeria with a thick Nigerian English accent, and health care professional, sought to acquire a home-resident for her husband and children, upon their migration to United States.  Post inquiry from colleagues and others, she was advised to consult a realtor.  No one advised or informed Ngozi of the need for an attorney in real estate purchases.

This was Ngozi's first home acquisition.  Ngozi's realtor, a newly licensed real estate agent, advised Ngozi and managed everything via her agent-brokerage firm.  They kept Ngozi ignorant of the need for counsel involvement.

The realtor located the home; owned by the Stephensons at that time.  The Stephensons were eager to sell without much delay, and Ngozi's realtor was eager to secure a closing and payment commission.  Ngozi noticed all parties of her intent to acquire the property for family residential purposes, with closing and possession to occur on/day of arrival of her pending migrating husband and children; and immediately take possession same-day, vs. apartment living.

The Stephensons were also not represented by counsel in the transaction.  There was a lender-mortgagee in the transaction.  Documents were prepared; Ngozi signed all documents as instructed at closing, including the 1993 survey; and the family immediately took possession as planned.  Hence Ngozi and husband were never suspicious as to need for any counsel involvement.

Ngozi secured and always maintained lender-mortgagee tax and insurance escrow services, to negate the possible encumbrance or risk known or disclosed to her.  She never had counsel involved, nor knew of any need for an attorney, in regards to the subject property.  Hence, Ngozi always understood her mortgagee as her "representative" in matters involving the subject property.

The 7/23/93 acquisition survey mentioned the 1977 HL&P easement (HCPR File No. F758989), and contained the drawing of the 80ft easement from the 1966 HL&P agreement. Yet neither the survey, nor the 1978 replat contained or showed a HL&P telephone pole or underground electric box on the subject property; nor does the 1966 & 1977 HL&P agreements, or the 1978 replat terms, allow for such. Grantor-Developer did not agree, protected and specifically negated such a covenant to run with the land.

Also unknown to Ngozi, who lacked counsel, an illegal HL&P underground electric box, non-existent in the 1978 recorded replat, nor allowed per the 1977 or 1966 HL&P agreements, inconspicuously appears in the 7/23/93 acquisition survey.

As of 2022, there now exists multiple underground electric storage boxes, an electric pole, and more, in the enclosed backyard boundary of the private residence. Homeowners or residents do not know when HL&P or their successors or assigns accessed the property and installed the electric storage boxes, electric poles, and more on the property for commercial or public use; nor did HL&P or their successors duly comply with notice, consent, due process, and just consideration requirements with Grantors or current homeowners and the subject property. No agreement.

Per the terms of the 1978 recorded replat, the 1977 HL&P agreement, and the 1966 HL&P agreements, Grantors-Developers specified the easement authority and scope conferred, and specifically did not agree for subsequent purchasers to be bound to HL&P's activities on the subject property's enclosed boundaries – e.g., installing and operating hazardous underground electric boxes, electric poles, etc.

The 1977 HL&P agreement was entered into before the 1978 recorded replat, and by different persons. Per IIIB, HL&P's underground electric service easement, was supposed to be at the rear property lines – i.e., rear end of the subject property fence.

6

The utility easement strip (i.e., 16 ft utility easement) on the plat and surveys that runs across the backyard of the subject property was unreasonable per, and since the 1977 agreement. Per the 1978 replat, lots 1 – 16 are unburdened by said 16ft utility easement, and have said 16ft utility easement beginning from the end of their backyard fence line. The subject property has a bigger backyard, hence an extended portion for its rear fence line.

The non-property fence line 16ft utility easement burden across the subject property's backyard, was an "additional easement" under IIIB: "… and such additional easements as may be required for its underground distribution system will be located at such points as the underground system reasonably requires…"

Additional Easements authority is "limited" per III(C) of the 1977 agreement; binding on only on the Developer, and not subsequent purchasers: "…**however, this paragraph is intended to create an obligation binding only on the Developer and the same is not to be construed as creating a covenant running with the land or as binding on subsequent purchasers of the lots in Braewood Glen Subdivision, Section 7.**" Hence, HL&P must get consent and pay royalties to subsequent purchasers or homeowners to have the "additional easement" (i.e., non-property fence line 16ft easement across the subject property backyard).

The plat and replat's aerial easement grant language does not grant HL&P or anyone any additional public utility easement over, across/ground, or underneath public utility easement, *in perpetuity*, that burdens the subject property or its backyard. Any public or such use easement or lease rights that affects Lot 17, all require actual knowledge and consent (e.g., consideration) by the homeowners. Simple. None was ever duly given by prior or subsequent Lot 17 homeowners.

HL&P/Center point have always known they was not agreement or HL&P rights as to the non-fence bordering 16ft public utility easement area on the subject property. HL&P have been

illegally[12] adding more hazardous materials in unauthorized areas in the subject property without homeowner knowledge or consent, and illegally evading consideration: HL&P have long been committing fraud-in-factum as to the subject property.

In order to have the non-fence line 16ft easement that runs across the subject property, and in order to put any poles, underground electric boxes, etc., on said area, HL&P must provide consideration and compensation (e.g., royalties) to Lot 17 subsequent purchasers.

Note: Developer and prior homeowners were aware, and kept or planted tall pine trees in the subject property border, approximately 8 ft apart each, to knowingly obstruct any lines or poles on any unknown or unrecognized easements areas in the subject property's backyard (e.g., the 16ft non-fence easement across the property). Two of the pine trees perished in 2009 and 2018 hurricane, and were removed by current homeowners. HL&P/CenterPoint, without knowledge or consent or payment of consideration, has moved their power lines and equipment further into the subject property backyard to illegally block the areas where the pine trees used to exist, and unreasonably and illegally access and use (e.g., install underground electric boxes, transmission poles and wires, and more) the non-fenced limited prior 16ft UE easement area that runs across the subject property's center backyard, without paying any damages or royalties.

Note: The 1993 survey charting of the ariel easement is wrong and/or another evidence of fraud, improper influence, or illegal collusion with HL&P; to fraudulent acquire more land or rights and harm homeowners' rights, health, safety, and investment returns. The adjacent ariel easement does not, or should not burden Lot 17.

---

[12] *"Wrongfully, knowingly, intentionally, maliciously, fraudulently deceptively, with conscious or deliberate disregard for the rights, health and safety of the titleholders, residents, or their guests or invitees,"* and/or *"with conscious advantage-taking mindset, motive, or plot,"* and/or *"despite the known or reasonably foreseeable risk that the wrongful actions violate Plaintiff(s) and/or homeowners rights, and cause or subjects them to serious and/or unreasonable harm,"* are hereby referred to collectively, and separately when applicable, as "illegally."

8

Note: The 1993 and 2009 surveys should not chart the 16ft UE across the property as running with the land. The strip that extends into and across the backyard of the subject property is the non-fenced "additional easement" area that requires payment from subsequent purchasers. Any indication otherwise is wrong, and/or another evidence of fraud, improper influence, or illegal collusion with HL&P; to fraudulently acquire more land or rights and harm homeowners' interests.

There is also an underground electric box, shown in the 1993 survey, that is missing in the 2009 survey. There are underground electric boxes now discovered to exist on the property, along with the introduced electric pole. Homeowners do not know when these appeared or were moved, nor consented, nor receive(d) any consideration (e.g., damages and royalties) before, during, or after their installations or operations.

## COMCAST & AT&T

There are no telecommunications easements or leases on the subject property per the 1978 replat, nor any telecom easement or lease agreements that affect the subject property's enclosures.

When telecom became widespread consumer used in the mid-1990s, HL&P/CenterPoint's electrical underground lines and boxes, illegally installed and illegally operated in the backyard of the property, illegally attracted telecom companies such as Comcast and AT&T into the backyard.

## Comcast

Years ago, Ngozi returned home from work in the day-time to unexpectedly see men in unique work-jacket uniforms jump from outside the backyard fence of the enclosed subject property, into the backyard of the subject property.

Upset and scared, Ngozi asked them who they were, and one individual said "Comcast" were on the property to work. Ngozi demanded authorization and work permit to be on the property, and none was provided. Ngozi then asked them to leave immediately, and they left.

Ngozi did not follow through with Comcast since the work-men did not provide a name or

9

identification to use for a complaint; as they may have been from any company.

On 2/24/22, Comcast contractors arrived on the property again, without due notice or identification. The Comcast contractors sought to access the property, alleging they had work to do on the property. Comcast is not a telecom service provider on the subject property.

Ngozi refused to allow them on the property, so they threatened police force to access the property. Counsel below intervened, and took charge. The contractors repeatedly pointed and demanded access to an AT&T illegally installed equipment, illegally installed behind HL&P's illegally installed transmission pole and electric box located in the property's enclosed backyard.

Ultimately, after two days of hostility, i.e., dealing with the Comcast contractors and their Houston Police Department co-conspirators' attempts to intimidate the subject property homeowners and residents, and illegally force their way into the home, counsel discovered that Comcast, acting without due notice, consent, due process, nor providing just consideration or compensation to homeowners, illegally installed and operate hazardous telecom equipment and underground wire-cables that run through or affect the subject property's enclosed boundaries.

Amongst others, Comcast's cables pass through and under the enclosed backyard boundary of the subject property, and in areas of the property ungoverned by any required easement or lease agreement for such commercial or public use activity. The hazardous cables and equipment installed provide cable and internet services to Comcast subscribers.

The Comcast contractors were not authorized to enter the property for their work in Feb 2022; as the equipment they sought to service was installed outside the fence, but with connecting cables that run through and under the subject property's backyard enclosures. Said Contractors also lacked and failed to provide proper identification upon their original arrival. It was a discrete illegal job/attempt by Comcast and its contractors, acting with HPD's support.

10

Upon notice of such wrongful activity around 2/24/2022, and after dealing with Comcast, its contractors, and HPD's conspired attempts to (a) intimidate the property homeowners and residents, and (b) achieve illegal forced entry unto the property, counsel officially noticed and engaged Comcast's counsel.

After the February 2022 notice to Comcast and their legal counsels, Comcast and its contractors illegally accessed the property subdivision, and illegally installed a second harmful operating equipment.; still without required notice, consent, or agreement from homeowners.

Comcast illegally, invidiously, insidiously, and vindictively installed and operate said 2nd unit-equipment – so close to the backyard fence of the property, and so close to CenterPoint's illegally placed pole and one electric box unit – that they damage the property, impede property maintenance, and harm the rights, health and safety of its homeowners, residents, and guests.

Comcast installed the units in a vindictive, invidious, false, deceptive, fraudulent, manner and location on the subject property, to (a) evade noticing the homeowners and residents of the intended and actual harm caused them, caused their rights, and caused the property; (b) illegally damage the subject property; (c) evade paying any compensation or damages; and (d) further harm the homeowners, residents, and their guests' rights, health, and safety.

Comcast has since also failed to maintain its equipment(s), to the extent that their operation poses a health and hazard risk to the subject property's homeowners, residents, and guests.

## AT&T

*Inter alia*, AT&T does not have an easement or lease agreement for their mass commercial or public use on the subject property. Yet AT&T, acting without due notice, consent, due process, nor just consideration and compensation to homeowners, illegally installed and operate hazardous telecom equipment and underground wire-cables that exist on the property's enclosed boundaries – hidden behind HL&P's electric pole. AT&T's telecom unit's cables also runs through and affect

the property's enclosed boundaries.

The property's homeowners and residents did not know when AT&T installed the equipment on the property, nor are they duly noticed when AT&T enters the property to maintain, or operate the AT&T equipment on the property.

AT&T is the internet and/or cable service provider on the subject property. Yet the services provided via equipment in the property's enclosed backyard is not exclusively for the subject property and its residents, but for commercial mass or AT&T's subscribers. No mass or public use authorized AT&T on the property.

When counsel engaged Comcast's legal team in late Feb 2022, counsel also noticed AT&T's counsel of the illegal equipment in the backyard. Over the following months, AT&T invidiously and insidiously made their violation clear – that the unit in the backyard was not exclusive for the subject property. AT&T continuously sent technical staff to the subject property to conduct maintenance of cable and internet services for other AT&T subscribers. Hence, homeowners and residents discovered that AT&T's equipment was not exclusively for Ngozi's AT&T subscription, but for AT&T's many subscribers.

Sometimes AT&T staff come on the property and demand access to the backyard and the AT&T unit, where one of HL&P's underground storage electric box exists; without due notice or consent, and/or in an aggressive or hostile manner; to service other subscribers. When asked to leave, the staff would threaten to call HPD on homeowners or residents.

AT&T's illegal operations on the property, for the benefit of AT&T and other subscribers, is a hazardous risk and harm to the rights, health and safety of the property's homeowners, residents, and guests. For example: On some occasions, AT&T's staff would come on the property to address the homeowners' issues, re-route the wire cables, and leave them exposed on the ground.

Amongst others, such hazardous operation activities damaged the property, and deterred or impeded property maintenance. On other occasions, AT&T would send hostile staff on the property to address other AT&T subscribers' maintenance issues. The hostile staff would instead disconnect the services for other AT&T subscribers. Hence, AT&T would send another staff to the property to fix either the latter issue, or both issues. Such required someone (e.g., counsel subscribed below), to always be present on the property.

Amongst others, Plaintiff discovered that the subject property, a private property, was being forcibly, invidiously, and insidiously turned into mass commercial or public use property riddled with hazard, risk, harm or losses carried by/forced upon the homeowners, residents, and their guests; without knowledge or consent of the homeowners, residents, and invitees; and without required notice, Plaintiff(s)-homeowners' equally protected due process/condemnation proceedings, just consideration, or compensation paid.

Amongst others, Plaintiff discovered that AT&T and/or Comcast's telecom illegal equipment and operations, also severely harmed the privacy, security, finances, and personal and business matters of the homeowners, residents, and guests; as some work from the home.

### NFBWA[13]

In the 1940's as City of Houston expanded, City of Houston development officials anticipated the further growth of Houston, and secured water rights from all surrounding sources. As Fort Bend County subsequently developed, they lacked access to water. NFBWA, a taxing entity, was duly organized and charged with water provision for Fort Bend County residents. Fort Bend and/or NFBWA entered into an agreement with City of Houston, to acquire water for daily

---

[13] Additional necessary or material FACTS are on file in **Ngozi Adimora-Nweke [8/24/2022] Affidavit on NFBWA & PAS Water Line Easement Matter;" "Ngozi Adimora-Nweke Affidavit on Comcast, AT&T, & CenterPoint/HL&P Matters;"** and **PLAINTIFF'S ORIGINAL COMPLAINT EXHIBITS**; all filed via CD along with their supporting Exhibits/evidence. *See*, **Doc. 27**, Cause 4:22-CV-03155, S.D. Texas, Houston, Division.)

use which is transmitted through pipelines via pump station across the street from subject property.

The subject property and subdivision, is located at the end of Harris County and City of Houston. NFBWA built pump stations on the other side of Bellaire Road, across the street from the subject property; and after 2009, illegally, and without knowledge, consent, good faith offers, agreement, condemnation suit, or compensation (e.g., damages and royalties), installed water pipelines that run through a material portion of the subject property to provide Fort Bend County residents with water for daily use/consumption.

*Inter alia*, NFBWA and PAS agreed to, and acted in furtherance of their agreement, to deprive Plaintiff(s) of equal protected personal and property rights, and due process rights. Really, all Defendant(s) did such really.

Sean Patrick Kennedy of PAS, acting in conspiracy (i.e., in agreement and in furtherance of the agreement) with Steve Bonjonia of PAS, & both acting on behalf of PAS and NFBWA, and in conspiracy with PAS and NFBWA executives, counsel(s), & staff, forged a counteroffer letter on Ngozi's behalf, purporting an offer to sell or purchase property rights for $1000. (Exhibit 6)

The homeowners nor counsel, knew nothing about any $1000 offers or counteroffers. The 12/2/2009 dated letter instructed Ngozi as follows, presumed as terms of acceptance:

"Please have the enclosed easement signed and the original returned to our office for recordation. There is also a w9 attached which needs to be singed and filled in with the correct information and sent to us with the original easement. Once we receive the original documents back fully executed, Property Acquisition Services will request funds from North Fort Bend Water Authority...."

On 12/4/2009, NFBWA &/or PAS's Steve Bonjonia and/or Sean Patrick Kennedy, dispatched the fraudulent 12/2/2009 PAS & NFBWA counteroffer letter, with a blank copy of the forged recorded document, and a blank W9 form, via U.S. Post office, to Ngozi Adimora-Nweke and her son, Ernest Adimora-Nweke, at the subject property.

On the evening of the same 12/4/2009, NFBWA &/or PAS personnel, Bonjonia, drove to

14

the subject property, arrived in the backyard, again disclosed himself to Ngozi and Ernest A. Nweke as a government agent acting for NFBWA, and told the homeowners that the government mandate process/procedure was (1) that they had to sign the document (a) in order to be in compliant with the law, and (b) in order not to lose their home; and (2) that he would return later to work out any details as to valuation and payment.

Bonjonia presented only the signature page was presented to Ngozi and her husband Ernest A. Nweke, when he had them signed it in the backyard of the property, the evening of 12/4/2009. Bonjonia went on the property alone. There was no notary present. The homeowners were not given reasonable or any opportunity to read the signed document before signing it, nor was the document notarized before them, nor was it notarized or recorded with their knowledge or consent.

Neither Ngozi, nor her husband Ernest A. Nweke, nor their son Ernest Adimora-Nweke, have ever met Sean Patrick Kennedy. In Dec-2009, Ernest Adimora-Nweke, was in Lubbock, TX; ignorant of the fraud activities against his parents. Ernest A. Nweke's driver's license, passport, or official IDs, never stated/states "Ernest Adimora-Nweke."

When PAS' 12/2/2009 letter with the blank version of the recorded 12/4/2009 document, and blank W9 form arrived in the mail, Ngozi signed the document only to comply with the law as warned or instructed – without knowledge of its contents, and kept awaiting Steven Bonjonia's return to continue negotiation, valuation, finalize the agreement and payment; as he had promised.

Steve Bonjonia never returned as promised. Ngozi never heard from his again, nor heard anything about NFBWA or the water line easement matter thereafter; not from NFBWA, PAS, their agents, her husband Ernest A. Nweke, or anyone. Ngozi therefore never raised nor discussed the water line easement matter with her husband; nor signed and returned either the water line easement document or the W9, as instructed. Ngozi discretely kept all mailed documents and

15

continued to await Steve Bonjonia's promised return; which never occurred.

Neither the homeowners nor the residents of the subject property were aware that the 12/4/2009 document was eventually signed by PAS or NFBWA or a notary. They were also never aware that the 12/4/2009 document was eventually recorded on their property.

Neither Ngozi nor her husband were provided any copy the document they signed on 12/4/2009, nor were they provided a copy of a NFBWA-executed version of the 12/4/2009 document, nor were they provided a copy of the recorded version; nor were they provided any notice of such false/fraudulent activities. There was no other contact or communication with Ngozi after 12/4/2009 on the water easement matter regarding the subject property. Rather, NFBWA mailed Ngozi was a vague or general advertisement around April 2010 (Exhibit 7).

Neither the homeowners nor residents were aware that NFBWA and/or their agents eventually did install a water line easement on and through the subject property; until around late April 2022 - when counsel/Ngozi's son, Ernest Adimora-Nweke, was physically approached by a NFBWA operations staff, in the subject property backyard, and told that the homeowners (Ngozi and husband, and family) will have to move the property fence due to NFBWA's alleged ownership and ongoing water pipeline under the property, used to provide all Fort Bend with water.

Counsel immediately searched and contacted NFBWA counsel, who provided counsel with copies of the unknown, unconsented, and falsely recorded 12/4/2009 document (Exhibit 8); and subsequently, a copy of a criminal fraudulent $1000 invoice dated 12/04/09 (Exhibit 9), signed by Ngozi's husband under duress and anxiety on 12/30/09, and unknown to Ngozi or counsel until 4/12/2022. Ngozi neither signed nor endorsed the $1000 invoice document, or any valid document on the matter. *Inter alia*, Ngozi was kept ignorant of all activities on the matter after 12/4/09.

NFBWA and their counsel still deem Ngozi's son as Ngozi's husband or co-homestead

16

owner, and the signatory on the forged recorded 12/4/2009 document. (Exhibit 10)

NFBWA admitted it cannot provide counsel or Ngozi with a copy of any check endorsed by Ngozi and her husband, that shows any receipt of any payment or consideration from NFBWA, PAS, or anyone on the water easement matter. (Exhibit 11) They provided a front copy of drafted check for $1000, but cannot provide the back copy – needed to prove any joint agreement, receipt by homeowners, or endorsement by Ngozi and her husband.

No one orally informed homeowners of their right to counsel on the matter; nor provided them with fair opportunity to obtain counsel on the 12/4/2009 document; nor reasonably informed them of their rights, including entitled equal protection and due process right to a proceeding in an impartial tribunal. There were no good faith offers, no agreement, no condemnation suit, nor any due process, consideration, or compensation with/from NFBWA or PAS; or any Defendants.

None of Ngozi's mortgagee-lender(s) was/were ever actually noticed, informed, nor provided consent to any of the challenged or complained-of activities on the subject property backyard. Current homeowners were never actually noticed, informed, nor provided consent to any of the challenged or complained-of activities on the subject property backyard.

## **ARGUMENT & CAUSES OF ACTION**

All contents in the above and subsequent sections, are hereby incorporated by reference.

Amongst others, there lacks any valid water-line, electric, or telecommunications easement[14] or lease agreement on the subject property, nor any intent of Grantors or homeowners to perpetually burden the private enclose boundaries of the subject property. *See* HCPR File No(s): F758989; Vol. 277, Pgs. 124 – 130 (09/08/1978) ("A Replat of A Replat of Braewood Glen Section 7."); *See also*, HCPR File No(s): C423806 (12/19/1966), & F538775 (04/03/1978).

Defendants, all at various times, and without any right, due process such as good faith offer,

---

[14] Easements in Texas (tamu.edu); https://assets.recenter.tamu.edu/documents/articles/422.pdf

17

consideration, agreement, condemnation proceedings, knowledge or consent from Plaintiff(s), or authority, illegally agreed to, and acted in furtherance of their agreement to continuously entered and/or installed their electrical, water-line, or telecommunications equipment in the enclosed backyard of the subject property, for public use or Defendants' commercial benefit from services to consumers, without the various necessary or required notices, or condemnation proceedings, or damages and royalties compensation due Plaintiff(s) and/or homeowners; and did so without Plaintiff(s)' knowledge, consent, any required due process, good faith offer, or agreement; all to Plaintiff(s)' detriment/harm. All DTPA pre-suit notices were sent on 4/2022 upon claim discovery.

The subject property is uniquely located, with a huge backyard that extends further than any other in the subdivision. The extension component, due to its location, always had major financial value or benefit for Defendants and Plaintiff(s). Defendants have continuously sought to marginalize Plaintiff(s) and illegally deprived Plaintiff(s) of their financial benefit. Yet no Defendant pays property taxes on, nor maintains the subject property, or any of the disputed areas.

Plaintiff(s) have incurred losses including pain and suffering, mental anguish, medical expenses, loss of income and/or royalties, loss of income and/or royalty opportunities, reputational injury, embarrassment and humiliation to person and name including family name, harm to business and profession, property damage, fees, costs, and more, caused by the Defendant(s) wrongful illegal actions; and any of Plaintiff(s) justified reliance on false or illegal actions.

## HL&P/CenterPoint, AT&T, & Comcast & Contractors, Executives & Employees Fraud-in-factum, fraud in the inducement, DTPA, Inverse Condemnation, Premises Liability, Slander of Title, Quiet Title, Invasion of Privacy & 42 USC §1983; §1985(2); §1986, & violation of Texas Property Code

HL&P/CenterPoint, AT&T, & Comcast, acquired no rights in the subject property, and knew they had no rights or agreement in support in the subject property. They each at different times, sought to deny Plaintiff(s) and homeowners of their equal protection and due process rights,

18

including right to just damages and royalties from the property. They also sought to, agreed, and acted in furtherance of their illegal agreement for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in Texas, with intent to deny to Plaintiffs and homeowners the equal protection of the laws, or to injure them or their property for lawfully enforcing, or attempting to enforce, their rights – including right to civil and criminal redress of harm caused them – and that of others subjected to the property and the wrongful illegal actions, to the equal protection of the laws.

HL&P obtained a private easement agreement from prior Grantors through fraud; and since 1966 and through recently, have continued to violated the terms of their fraudulently obtained agreements for the subdivision, and have continuously and illegally defrauded and/or illegally evaded paying consideration, royalties, and/or damages due the titleholders or Plaintiff(s).

When telecom became widespread consumer used in the mid-1990s, HL&P/CenterPoint's electrical underground lines and boxes, illegally installed and illegally operated in the backyard of the property, illegally attracted telecom companies such as Comcast and AT&T into the backyard.

Neither Comcast nor AT&T has any of the legally required applicable easement agreement with any of the subject property Grantors or homeowners, to install or operate any of their cable television and internet equipment on the subject property for public use. AT&T's equipment is located next to HL&P's transmission lines pole and one of the electric boxes in the backyard. AT&T installed their cable and internet equipment, discovered to be a premises hazard with electrical wires inside, hidden behind HL&P's pole in a subtle and deceptive location – unable to be seen by anyone on the subject property, unless they examine further down its extended area.[15]

Comcast, amongst others, illegally installed and still operate two telecom cable and internet

---

[15] Note: AT&T is the current internet and tv cable service provider on the property. The unit is mass commercial use.

units, with telecom cables that pass through and under the enclosed backyard boundary of the subject property, and in areas of the subject property where there is no easement or lease for such ground wire cables, without any good faith offers, no condemnation proceedings, etc.

Upon notice of such wrongful activity around 2/24/2022 and after, counsel noticed and engaged Comcast and its legal counsel.

Amongst others, after the first February 2022 notice to Comcast and their legal counsel, and without proper required knowledge, consent, or agreement from homeowners, Comcast and its contractors illegally accessed the property subdivision and illegally installed and still operate a second telecom unit, installed and operated right so close to the backyard fence of the subject property, and close to CenterPoint's illegally placed pole and electric box unit. Comcast installed the unit in a false, deceptive, fraudulent, manner and location to evade notice to the homeowners of the subject property; to illegally damage the subject property and the homeowners, residents, and their guests' rights, health, and safety; and to evade paying any compensation or damages. Comcast's 2nd unit recently illegally installed after the 02/2022 notice to their counsel, affects or harms maintenance or replacement of the fence.

AT&T, HL&P, & Comcast's wrongful and illegal operations on the subject property, also continuously pose a serious flagrant or unconscionable risk and harm to Plaintiff(s), and causes serious premises health and safety danger and harm to the subject property, its residents, invitees, homeowners, and all exposed to the property – e.g., Plaintiff(s). None had the required or legal consent for their operations on the subject property; none went through any condemnation proceedings to acquire any rights or consent to the property; none have operated in any reasonable, to show they have any colorable rights to the property (e.g., fair/required/reasonable notice to homeowners before entry or operations on the subject property). Rather, they have continuously

operated in a flagrantly false, fraudulent, and deceptive manner that shocks the conscience, and seriously harms Plaintiff(s) and their rights; including by subjecting them to unconsented and unreasonable continuous risk, liability, liability exposure, and/or financial harm via evading paying due compensation (e.g., damages and royalties).

Amongst the flagrantly wrongful electric and information security hazard posed by AT&T, HL&P, & Comcast's illegally installed and operated electric and telecom units/equipment, in or dangerously close to the enclosed backyard of the 6826-subject property, which causes Plaintiffs serious continuous damages and risk of harm, Plaintiff(s) also continuously endure the wrongfully imposed or caused risk, hazard, and harm to the subject property, Plaintiff(s), and their rights, all caused by Defendants' wrongful and illegal actions, including any of Plaintiff(s) justified reliance.

Plaintiff(s) and or homeowners have incurred various losses including but not limited to pain and suffering, mental anguish, medical expenses, loss of income and/or royalties, loss of income opportunities or royalties, reputational injury, embarrassment and humiliation to person and name including family name, harm to business and profession, property damage, fees, costs, and more, caused by the various wrongful actions of Defendant(s) and their agents and executives; including the entities' customs and practices that allowed for such illegal harmful activity (e.g., their failure to supervise staff, contractors, or agents; failure to screen executives, staff, contractors, or agents; their failure to retain qualified executives, staff, contractors, or agents; and their executives, counsels, managers, and/or supervisors' failure, neglect or refusal to prevent the continued wrongful-illegal activity and harm against Plaintiff(s)) all basis for federal claims.

**NFBWA & PAS & Contractors, Executives, & Employees**
**Fraud-in-factum with Forgery, Fraud in the inducement if applicable, DTPA, Inverse Condemnation or Texas Property Code Violation, Quiet Title, Premises Liability, Slander of Title, Invasion of Privacy, Defamation/False Light, & 42 USC §1983, §1985(2), & §1986**

Defendants NFBWA and/or PAS acquired no rights in the subject property.    With

21

deliberate indifferent to Plaintiff(s) rights, health and safety, they invaded and continue to illegally exist and operate on the subject property, without paying any just compensation – including royalties – to the homeowners. Their existence and activity under these circumstances poses a risk or danger to homeowners and residents' rights, interests, health, and/or safety.

Defendants NFBWA & PAS illegally obtained the subject property's current homeowners' signatures on a forged and recorded document obtained via fraud-in-fact, Inst. FC# RP070142867 *(See also*, HCPR File No(s): 20100037723); for a water-line/water pipeline that must and does run through the subject property's enclosed backyard.[16]

NFBWA and PAS, acting though their executives and agents, illegally obtained Plaintiff Ngozi's signature on the signature page of an unread, incomplete, unnegotiated, and unsigned 12/4/2009 document. The same Defendants NFBWA, PAS, and their executives and agents later forged and recorded on the subject property as Inst. FC# RP070142867, without Ngozi's knowledge or consent, without due process due to Ngozi and homeowners, and without Ngozi or her husband's knowledge or joint consent to the terms of the forged Inst. FC# RP070142867.

E.g., The forged deed, Inst. FC# RP070142867, was not notarized before Ngozi and her husband. They never consented to the notary of any NFBWA or PAS recorded document.

Neither Ngozi nor her husband, Ernest A. Nweke, nor counsel, have ever met Sean Patrick Kennedy, the notary of the forged deed; Inst. FC# RP070142867. Sean Patrick Kennedy, the notary of the forged recorded deed, is an agent or employee of PAS, a private entity acting as contractor for NFBWA, a government entity, and a real estate agent, at the time of the forgery. He was not an independent third-party to the transaction, nor a required licensed real estate broker.

---

[16] The document is forged under Texas Penal Code §32.21(a)(1), and is evidence of fraud-in-fact because, *inter alia*, there was no agreement between the homestead of the subject property (i.e., Ngozi and Ernest A. Nweke) and NFBWA nor PAS, in regards to any property rights, interests, or water-line easement on the property. Furthermore,

22

NFBWA and its executives, fraudulently, knowingly and intentionally engaged an illegal an unlicensed PAS entity and its corrupt team to try and secure the subject property and water-line easement rights, without due process and proper compensation due homeowner-Plaintiffs.

The forged deed with Inst. FC# RP070142867, amongst others, is *prima facie* proof of defamation and fraud-in-factum. Amongst others, the unread or un-negotiated forged deed bears Plaintiff-counsel's name: Ernest Adimora-Nweke, and Plaintiff-counsel's mother's name: Ngozi Adimora-Nweke, as his wife. Such is clearly libel – false and illegal incest relationship between mother and son.[17] The subject property is a homestead property jointly owned and held by Plaintiff-Ngozi, and her husband, Ernest A. Nweke, Plaintiff-counsel's father. Ernest Adimora-Nweke was away in law school during this period, unaware of NFBWA & PAS' illegal and harmful actions on subject property, his parents, himself; and their liberty and property rights.

Just as his parents, Plaintiff-counsel Ernest Adimora-Nweke, has also never met Sean Patrick Kennedy; and also, never saw the forged deed until April 2022. No Plaintiff(s) or homeowner, or resident of the subject property, ever saw the forged deed, or ever knew of any water-line installed on the property until, April 2022.

Ngozi never agreed to any amount for valuation or as compensation for the water-line easement. She rejected all their offers and valuation methods. Ngozi never agreed to NFBWA or PAS' price offers nor agreed to their valuation method. Neither NFBWA or PAS paid any money,

---

[17] Such statement on the forged deed, and in NFBWA's 2022 write-up still holding Ernest Adimora-Nweke as the signatory on the forged deed, is an unauthorized and flagrantly false/invidious statement of fact and flagrantly false/invidious implications in regards to the property owners, the mother-son relationship of Plaintiff(s), the homeowners' husband and wife relationship, and the family name and family member's known normal and respectable co-relations to each other; illegally published on a public deed and to various other third parties; that tends and did harm all Plaintiff(s) and homeowners, family members, businesses and property's reputations, value, and liberty; and amongst others, was and is maliciously or illegally done and continued, with knowledge that the statement is false or with reckless disregard as to its falsity, and with knowledge of the harm that it will and did cause Plaintiff(s), homeowners, the family members, the property, their businesses, reputation, income and income opportunities, rights – e.g. liberty and privacy rights, health, and safety, etc.

or provided any valuable consideration – e.g., $10, $1000, or anything – to any of the subject property/homestead's joint-homeowners before, on, or after 12/4/2009. Ngozi never received any money or payment from PAS or NFBWA for the water-line easement; nor did she ever agreed to any of their terms, including price or valuation, for the water-line easement at any time.

Neither PAS, NFBWA, or any of their executives or staff, ever orally, clearly/inconspicuously, or reasonably informed the subject-property homeowners/residents, including Ngozi, of their right to effective counsel assistance, or of their right to a hearing to contest PAS and NFBWA's actions via due process condemnation suit/proceedings entitled them.

To deceptively secure their signatures on the forged deed's signature page with intention to harm Plaintiffs, NFBWA, PAS, and their personnel leveraged false representations, deception or deceptive trade practices, intimidation, and coercion.

Amongst others, Mr. Bonjonia arrived on the subject property backyard on 12/4/2009, and disclosed himself as an agent of the government. After intimidation and coercion of the homestead owners, he presented Ngozi and her husband with the signature page of the pre-drafted, unread, un-negotiated, and unconscionable 12/4/2009 document, and falsely represented to them that, *inter alia*, (a) they were mandated by the government to sign the document; (b) they had no choice but to sign the document as it was government required; (c) that the process for the transaction was that after they sign the document he would later return and resolve any valuation or compensation issues, and resolve any other details the homeowners' have as their concern on the matter; and (d) that if they refused to sign, they would not be complying with the law, and the government will still take their property. Neither Ngozi nor her husband ever read nor understood the forged recorded deed before signing it, nor had a fair opportunity to read the document or confer with counsel on its terms. Only Bonjonia was present in the backyard of the subject property on

12/4/2009 when Ngozi and her husband, Ernest Nweke, signed the page; *no notary*.

Mr. Bonjonia, PAS, and NFBWA agreed, plotted/planned, and acted in furtherance of their illegal plans and wrongful agreements (*inter alia*, to harm Plaintiff and evade payment of due royalties and other compensations due them), by amongst others, deceiving, intimidating, and/or coercing the homestead-owners into executing the signature page sign the forged deed's signature page the same 12/4/2009 day Mr. Bonjonia came and presented it to them, (1) without counsel's assistance, (2) without their review, knowledge, or explanation of the forged deed's contents/terms, (3) without the fair due process entitled the homeowners – e.g. condemnation proceedings, and (4) with knowledge that the homeowners did not agree and would not jointly agree to the forged recorded deed's terms.

There was never required joint acceptance of any water-line easement offer. Ngozi never received or accepted any payment on any water-line easement matter. Ngozi never knew of any acceptance of any offer, or any payment made on the matter. The homestead owners never duly received any copy of the 12/4/2009 document Bonjonia, PAS, and NFBWA had them sign its signature page on 12/4/2009; nor did they ever receive a copy of the forged Inst. FC# RP070142867 after it was signed by NFBWA or after it was recorded, until 2022.

Plaintiff(s), homeowners, and/or residents of the subject property never saw the forged document, or ever knew that NFBWA & PAS recorded the forged deed/forged document, nor knew that NFBWA installed the water-line installed on the property; until altered of the water-line existence via an invader in April 2022.

Plaintiff(s), homeowners, and/or residents of the subject property were kept ignorant of NFBWA, PAS, their agents and co-conspirators' illegal acts to harm them and their property, while NFBWA, PAS, their agents and co-conspirators benefited and profited from the illegal acts at

Plaintiff(s), homeowners, and/or residents' expense.

NFBWA, PAS, *et al*, illegally precluded or denied homeowner-Plaintiffs of entitled due process (fair notice, hearing, consideration, right to counsel assistance, and just compensation), and have illegally operated on and continuously benefited from the subject property (over $100M **profit** after all expenses and investments, in their checking account, and with the profit dollar amounts and their checking account **increasing at an increasing rate annually**), simply so to illegal defraud and deny Plaintiffs' of their constitutionally entitled personal and property rights, and illegally evade paying consideration, royalties, and/or damages due the titleholders or Plaintiff(s); all via flagrantly false, fraudulent, and deceptive manners or illegal actions that shocks the conscience, seriously harms Plaintiff(s) and their rights.

Plaintiff(s) and or homeowners have incurred losses including but not limited to pain and suffering, mental anguish, medical expenses, loss of income and/or royalties, loss of income and/or royalty or income opportunities, reputational injury, embarrassment and humiliation to person and name including family name, harm to business and profession, property damage, fees, costs, and more, caused by the various wrongful actions of Defendant(s) and their agents and executives; including the entities' customs and practices that allowed for such illegal activity (e.g., their failure to supervise staff, contractors, or agents; failure to screen executives, staff, contractors, or agents; their failure to retain qualified executives, staff, contractors, or agents; and their executives, counsels, managers, and/or supervisors' failure, neglect or refusal to prevent the continued wrongful-illegal activity and harm against Plaintiff(s)) all basis for federal claims.

*Inter alia*, (a) Defendants' other wrongful, unconsented, and/or illegal operations on the subject property with or via third-parties, (b) Defendants' illegal actions with and/or without the fraudulent documents, which they illegally allege to be valid or binding documents to illegally act

on the subject property and illegally act to harm Plaintiffs, and (c) Defendants' actions and actions in agreement with other third-parties (1) to preclude, impede, or deter Plaintiffs from notice or knowledge of their property's value, their personal and property rights, or their sustained/sustaining harm/damages, (2) to preclude, impede, or deter Plaintiff(s) from redress of their sustained/sustaining damages, (3) to evade paying due consideration, royalties, and/or damages due the titleholders or Plaintiff(s), (4) to deprive Plaintiffs of their personal and property rights, and (5) to harm Plaintiffs. These risks, hazard, and harm include:

(1) Defendants, their agents, and/or other third parties' continued illegal invasions unto the subject property, and resulting harm to Plaintiff(s)' persons, personal rights (e.g., liberty, life, income, security, peace-of-mind, redress of harm or grievance, compensation for damages caused, etc.) and property (quiet enjoyment, privacy, exclusivity, financial value and benefit, etc.) rights, all without due consideration and compensation, without equally protected due process for Plaintiffs, without legal justification, and without due consent from Plaintiffs;

(2) illegally impeding, deterring, or affecting Plaintiffs' right to due course of justice due Plaintiffs under the laws, for them to secure due compensations for the risk, hazard, and harms sustained/endured, to the deprivations of Plaintiff(s) U.S. and Texas Constitutional equally protected 14th Amendment rights – *inter alia*, also achieved by Defendants via their continued illegal invasions unto the subject property and personal property and privacy of Plaintiffs;

(3) illegal evidence tampering, harassment, illegal intimidation, falsification and fabrication of evidence, including evidence on the subject property – *inter alia*, also achieved by Defendants via their illegal past activities and continued illegal invasions unto the subject property, the personal property and the privacy of Plaintiffs;

(4) giving and/or agreeing and acting in furtherance of the agreement with third-parties

such as Houston Police Department, City of Houston, Harris County, Fort Bend County, State of Texas, and/or their employees, and/or other wrongful minded or criminal minded third-party individuals to, *inter alia*, invade Plaintiff(s) privacy, to give unwanted publicity to private matters of Plaintiff, that are false and flagrantly wrong, and presents Plaintiff(s) before the public in a false light that would be highly offensive to a reasonable person, and to which they knew was false and flagrantly wrong, or acted in reckless disregard as to the falsity of the publicized private matters of Plaintiff(s) and the false light in which the other would be placed, all to evade due paying consideration, royalties, and/or damages due the titleholders or Plaintiff(s), and to deprive Plaintiffs of their personal and property rights, and harm Plaintiffs; and more.

Amongst others, these risks, hazard, and harm are/were also proximately or directly caused by, amongst others pled above, Defendants' deprivation of Plaintiff's rights to damages and royalties; the unconsented unreasonable false light, unconsented public exposure and invasion of Plaintiffs' privacy caused by Defendants; Defendants' fraud or forgery; Defendant's illegal operations on the subject property and in targeting Plaintiff(s); Defendants' deprivation of Plaintiffs' property rights without just compensation; Defendants' deprivation of Plaintiff's equal protection and due process rights including rights to counsel, condemnation proceedings as applicable, fair/proper valuation of their assets for damages and royalties purposes, damages and royalties compensation; and Defendants' obstruction of justice activities to cover/hide their illegal activities and cover themselves to evade civil and criminal redress – e.g. keeping Plaintiffs ignorant of their crimes to evade statute of limitations for e.g., Texas Penal Code 32.21 and 32.46 matters; and Defendants illegally manipulating the facts, evidence, and/or situation to seem as if Defendants duly had or have rights in the subject property and its backyard enclosures, or evade civil liability.

Plaintiff(s) and or homeowners have incurred losses including but not limited to pain and

suffering, mental anguish, medical expenses, loss of income and/or royalties, loss of income and/or royalty opportunities, reputational injury, embarrassment and humiliation to person and name including family name, harm to business and profession, property damage, fees, costs, and more, caused by the various wrongful actions of Defendant(s) and their agents and executives; including the entities' customs and practices that allowed for such illegal harmful activity (e.g., their failure to supervise staff, contractors, or agents; failure to screen executives, staff, contractors, or agents; their failure to retain qualified executives, staff, contractors, or agents; and their executives, counsels, managers, and/or supervisors' failure, neglect or refusal to prevent the continued wrongful-illegal activity and harm against Plaintiff(s)) all basis for federal claims.

## RELIEF REQUESTED

Plaintiff(s) ask for declaratory judgment that neither HL&P/CenterPoint, AT&T, Comcast, NFBWA, nor PAS, nor any entity duly obtained any public use or commercial rights in the subject property Lot 17, or its backyard enclosure.

Plaintiff(s) ask for Declaratory Judgment that the Bill of Rights sent Ngozi with the 6/16/2009 letters and packet (Exhibit 12), is insufficient for fair notice, and/or effectuates or results in denial of equal protection rights of citizens. It is invalid as applied in this case. *Inter alia*, the confusing Bill of Rights disclosures are unorganized, vague, confusing, and/or unreasonable as to (a) fair notice of the situation/material issues, material terms (e.g., condemn vs condemnation procedure vs condemnation action or proceedings) for a non-attorney, and/or (b) material necessary disclosure/info needed for imminent informed decision by vulnerable subject citizens (e.g., with limited resources, targeted, and/or denied a good faith offers and due process). It effectuates unconstitutional impediment, deterrence, or defeat of Plaintiff(s) and similar persons' exercise of equal protected right to counsel in such compulsory proceedings; and effectuates unfair discrimination against vulnerable, targeted, marginalized, or protected persons or class.

Also, valuation must consider best use, **use and benefit of the anticipated condemnation/public project**, and harm to the remining property. *Tex. Prop. Code § 21.041.* And, homeowners subject to Bill of Rights must be provided oral notice of their right to counsel at all times before or during any compulsory government activities or proceedings that affect their life, liberty, or property; not as NFBWA and/or PAS illegally evaded or failed to do in this case.

Plaintiff(s) ask for all/max remedies (disgorgement of profits remedy against applicable Defendants), damages (compensatory economic and non-economic damages, treble damages, exemplary/punitive damages against applicable individual or private entity Defendants, and cap buster damages as applicable), and past, present, and future royalties (30% of all profits or 25% of all revenues), entitled them in law and equity, against the various and applicable Defendants.

Plaintiff(s) ask for all/max attorney's fees & costs; & all relief allowed in law or equity; e.g., pre & post-judgment interest, injunction against illegal existence or operations, etc.

"I declare under penalty of perjury under the laws of the U.S. of America that the foregoing is true and correct, subject to typos or such errors. 11/3/2022.   /s/ Ernest Adimora-Nweke."

> Ernest Adimora-Nweke
> Texas State Bar Number: 24082602
> c/o Adimora Law Firm
> 3050 Post Oak Blvd., Suite 510
> Houston, TX 77056
> 281-940-5170 (Office)
> ernest@adimoralaw.com
> *Pro Se Plaintiff & Attorney for Plaintiff(s)*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above has this day, Nov. 3, 2022, was delivered to all necessary parties in this case or to the various attorneys of such necessary parties, in due course as allowed by the Court and pursuant to Fed. R. Civ. Pro.   Respectfully Submitted,

/s/ Ernest Adimora-Nweke

Jim McFarland (jmcfarland@jmlawyers.com) – Counsel for PAS, Mark Heidaker, Sean Patrick Kennedy, Steve Bonjonia; Britton Byron Harris (bharris@hhstxlaw.com) – Counsel for NFBWA; Scott Davis (sdavis@hdwlegal.com) – Counsel for CenterPoint; Rick Addisson (raddison@munsch.com) – Counsel for Comcast; Derrick Reed (derrick@srapllc.com) – Counsel for AT&T.